IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TRACY L. MORGAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-631-ALM-KPJ |
| | § | |
| KILOLO KIJAKAZI, | § | |
| *Acting Commissioner of Social Security*, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Tracy L. Morgan ("Ms. Morgan") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits. Having considered the briefs submitted by the parties and the administrative record, the Court recommends the Commissioner's final decision be **AFFIRMED**.

**I.     APPLICABLE LAW**

**A.  Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *See* 20 C.F.R. §404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[1] of presumptively disabling impairments; or (4) the claimant is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv); *see also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show her impairment meets or equals a Listing but proves that she is unable to perform her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

### B. Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[2] is "'supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.'" *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the claimant is not entitled to relief. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Perales*, 402 U.S. at 401). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam) (internal quotation omitted)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475) (internal quotations omitted). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (internal quotations omitted).

## II.     BACKGROUND AND PROCEDURAL HISTORY

Ms. Morgan was born on August 10, 1970, attended school through seventh grade and later obtained her General Educational Development ("GED") certification, and last worked in October 2019, as a manager of a residential rental office. *See* Tr. 261, 263, 265, 448. On December 9, 2019, as amended on January 24, 2020, Ms. Morgan filed an application for disability insurance benefits, in which she alleged a disability since October 20, 2019, due to chronic obstructive pulmonary disease ("COPD"), post-traumatic stress disorder ("PTSD"), severe depression, anxiety, and high blood pressure. *See id.* at 285, 448–56. The Social Security Administration denied Ms. Morgan's claims initially on August 6, 2020, and upon reconsideration on December 16, 2020. *See id.* at 284–321. Thereafter, Ms. Morgan filed a written request for a hearing. *See id.* at 337–38. On September 1, 2021, Administrative Law Judge Bernard McKay (the "ALJ") held a hearing (the "Hearing"). *See id.* at 256–83. The Hearing was attended by Ms. Morgan, her attorney, and a vocational expert. *See id.* at 256.

On October 12, 2021, the ALJ issued an unfavorable decision denying Ms. Morgan's claim. *See id.* at 235–55. The ALJ found Ms. Morgan met the insured status requirements of the Social Security Act (the "Act") through December 31, 2024. *See id.* at 240. At step one, the ALJ found Ms. Morgan had not engaged in substantial gainful activity since October 20, 2019. *See id.* At step two, the ALJ found that Ms. Morgan had the following severe impairments: COPD, depression, PTSD, and obesity. *See id.* At step three, the ALJ found that none of Ms. Morgan's impairments, alone or in combination, met or medically equaled a Listing. *See id.* at 240–42. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Morgan's RFC. *See id.* at 242–47. The ALJ found the following:

> [Ms. Morgan] has the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently. She can stand and walk for six hours in an eight-hour workday, and she

can sit for two hours in an eight-hour workday. She can have no more than occasional exposure to concentrated levels of dust, fumes, odors, and gases. She is limited to occasional interactions with coworkers. Her sustained concentration, persistence, and pace is limited to simple instructions and tasks.

*Id.* at 242. At step four, the ALJ found that Ms. Morgan was unable to perform any of her past relevant work as a cashier, front office worker, housekeeping cleaner, fast food cook, or personnel attendant. *See id.* at 247. Therefore, the ALJ moved to step five, where he found that Ms. Morgan has the ability to perform the jobs of marker, router, and mail sorter. *See id.* at 248. Accordingly, the ALJ concluded Ms. Morgan was not disabled within the meaning of the Act. *See id.* at 249.

Ms. Morgan requested that the Appeals Council review the ALJ's unfavorable decision. *See id*. at 5. On June 21, 2022, the Appeals Council denied the request for review. *See id.* at 5–8. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). On July 25, 2022, Ms. Morgan timely filed her appeal to this Court. *See* Dkt. 1.[3]

### III.   ANALYSIS

First, Ms. Morgan argues that "the ALJ failed to assess [Ms. Morgan's] physical limitations when making a finding that [Ms. Morgan] could perform light work." Dkt. 12 at 1. Second, Ms. Morgan argues that "the ALJ erred in finding [Ms. Morgan] was able to perform work that required simple instructions and tasks." *Id.*

**A. Physical RFC**

The RFC is an assessment of a claimant's ability to do work on a sustained basis in an ordinary work setting despite the claimant's impairments. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). The RFC assessment is based on "all of the relevant medical and

---

[3] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 7.

5

other evidence," 20 C.F.R. § 416.945(a)(3), including, but not limited to: medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations, SSR 96-8p, 1996 WL 374184, at *5. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citation omitted). "Determining a claimant's residual functioning capacity is the ALJ's responsibility, and he has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." *Gonzales v. Astrue*, 231 F. App'x 322, 324 (5th Cir. 2007) (per curiam) (citing *Ripley*, 67 F.3d at 557; *Holman v. Massanari*, 275 F.3d 43 (5th Cir. 2001)).

The ALJ determined that, based on Ms. Morgan's RFC, Ms. Morgan could perform the jobs of marker, router, and mail sorter, all of which are classified as positions requiring "light work." Tr. 248. "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

### 1. Record Evidence

Generally, Ms. Morgan argues that, because of her chronic hand, feet, and back conditions, she cannot perform any of the jobs the ALJ found she could perform. *See* Dkt. 12 at 7. More specifically, Ms. Morgan argues that her subjective complaints as to these conditions were improperly considered by the ALJ. *See id.* The Commissioner responds that Ms. Morgan has failed to carry her burden to show that she has functional limitations related to these impairments and

that Ms. Morgan's testimony at the hearing supports the ALJ's limitations finding. *See* Dkt. 17 at 5–7.

An ALJ is required to follow "an 'objective-subjective' two-step process in evaluating an applicant's subjective evidence . . . ." *Salgado v. Astrue*, 271 F. App'x. 456, 458 (5th Cir. 2008) (per curiam); SSR 16-3p, 2017 WL 5180304, at *2–3 (Oct. 25, 2017). "[The ALJ] must first determine whether there is an impairment that reasonably produced the symptoms complained of. If the [ALJ] finds no impairment, the individual is not disabled. If an impairment is identified, the [ALJ] then considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the applicant's ability to do basic work." *Salgado*, 271 F. App'x at 458. In determining whether a disability exists, an ALJ "owe[s] a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (citation omitted). However, "[t]he ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

Ms. Morgan argues that she suffers from "bilateral neuropathy," "trigger thumb," "neuropathy of her feet," and "chronic back pain with sciatica." Dkt. 12 at 7. At step one of the two-step "objective-subjective" process, the ALJ did not find that any of these conditions constituted a medically determinable impairment. *See* Tr. 240. First, in her application, Ms. Morgan did not allege any impairments related to her hands, feet, or back. Rather, Ms. Morgan alleged disability due to COPD, PTSD, severe depression, anxiety, and high blood pressure. *See id.* at 285. Ms. Morgan cites to three pieces of evidence in the record regarding her subjective complaints relating to her hand, foot, and back conditions. First, Ms. Morgan cites a "MH-Mulit

7

Progress Note," dated 11/09/2021 (Tr. 149–50), which documents Ms. Morgan's self-report that she has "back issues that cause neuropathy in my hands and feet[.]" *Id.* at 150. Second, Ms. Morgan cites a Treatment Record of her presentation at Signature Care Paris – Emergency Center, dated 1/26/2019 (Tr. 581–94), which documents Ms. Morgan's chief complaint as "Back or flank pain." *Id.* at 582. Third, Ms. Morgan cites a report of a medical appointment, dated 8/31/2020 (Tr. 681–83), documenting her self-reports of hand pain, which she described as a "burning sensation," and foot pain, which she described as "moderate." *Id.* at 681.

Additionally, at the hearing there were some mentions of Ms. Morgan's hand and foot problems. The following are exchanges from the hearing regarding Ms. Morgan's hand and foot problems:

> Q [Attorney]: What'd you think, Ms. Morgan, is your bigger problem that's making it hard for you to work? Do you think it's your anxiety and your depression, your mental problems, or do you think it's your – your COPD and your hand problems, what'd you think?
>
> A [Ms. Morgan]: I for sure think it's my anxiety and depression and –
>
> (Tr. 264–65)
>
> ---
>
> Q [Attorney]: Do you have problems with just one hand or is it both hands with that –
>
> A [Ms. Morgan]: Well, I have problems with both hands. My right hand is – it's more severe in it.
>
> Q [Attorney]: Okay. How much do you think you can lift and walk with and carry? In terms of pounds, comfortably, what would be an amount of weight that you would say that you can handle?
>
> A [Ms. Morgan]: No more than 20 because I'm to the point I can't even – I mean even walkin' without carrying something it's just so exhausting I can't even explain it to you. My breathing just stops.

*Id.* at 265–66.

8

While Ms. Morgan identifies some subjective complaints in the record, she fails to argue in her brief or point to any record evidence suggesting what, if any, impact her hand, foot, or back impairments had on her ability to work. In particular, at the hearing, there was no testimony that indicated these conditions had an impact on Ms. Morgan's ability to work. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se."); *Vereen v. Barnhart*, No. SA 05 CA 0010 XR NN, 2005 WL 3388136, at *5 (W.D. Tex. 2005) ("[A] plaintiff bears the ultimate burden of establishing that a specific diagnosed condition imposes actual exertional or nonexertional limitations.") (citing *Hames*, 707 F.2d at 165). This lack of evidence, along with Ms. Morgan's failure to identify these conditions in her application, militates against finding that Ms. Morgan has put these impairments before the ALJ. *See Rowe v. Colvin*, No. CV 16-204-RLB, 2017 WL 3821473, at *16 (M.D. La. Aug. 31, 2017) ("There is no indication in the objective medical evidence of any limitations, work-related or otherwise, as a result of immune deficiency. Plaintiff references immune deficiency in her testimony at the administrative hearing in response to questioning by her attorney, but there is very little support for this in the records, and immune deficiency was not a basis for her application for benefits."); *Deleon v. Colvin*, No. 7:14-CV-340, 2015 WL 12552003, at *14 (S.D. Tex. Sept. 22, 2015) ("Here, Plaintiff did not allege in her disability application that depression affected her ability to work."); *Sweeten v. Astrue*, No. 3:11-CV-934-G BH, 2012 WL 3731081, at *9 (N.D. Tex. Aug. 13, 2012), *R. & R. adopted*, 2012 WL 3735884 (N.D. Tex. Aug. 29, 2012) ("Although Plaintiff argues that the ALJ failed to consider her anxiety as a severe impairment, she never claimed anxiety as an impairment in her initial or subsequent reconsideration applications."); *cf. Skidis v. Comm'r of Soc. Sec. Admin.*, No. CIV.A. 308CV2181NBH, 2009 WL 3199232, at *10 (N.D. Tex. Oct. 2, 2009) ("This case is distinguishable from *Leggett* in that Plaintiff specifically claimed that she was

disabled due to depression and anxiety among other things in her disability application."). Because Ms. Morgan did not allege in her application that she suffered hand, foot, or back problems and did not sufficiently point to record evidence of the impact of these conditions on her ability to work, there is no error in the ALJ not finding that these problems were medically determinable impairments.

Because the ALJ did not err in his determination that Ms. Morgan's hand, foot, and back problems were not medically determinable impairments, the ALJ had no duty to consider Ms. Morgan's subjective complaints regarding them. *See Salgado*, 271 F. App'x at 458; SSR 16-3p, 2017 WL 5180304, at *2–3 (Oct. 25, 2017). Regardless, the ALJ considered Ms. Morgan's subjective complaints regarding her hand and foot neuropathy. The ALJ noted Ms. Morgan's subjective complaints as to her hand and foot pain and cited a treatment note indicating that Ms. Morgan's neuropathy was controlled with medication. *See* Tr. 245. "If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (per curiam) (citations omitted). Additionally, as the Commissioner points out, the ALJ credited Ms. Morgan's hearing testimony that she could lift no more than twenty pounds; in the ALJ's RFC, the ALJ found that Ms. Morgan could occasionally lift twenty pounds. *See* Tr. 242.

In his report, the ALJ did not discuss Ms. Morgan's subjective complaints as to her back impairment. However, not only did Ms. Morgan not allege any back impairment in her disability application, but at the hearing, Ms. Morgan's back impairment was never raised. *See id.* at 258–

82. As Ms. Morgan failed to put her back impairment before the ALJ, the ALJ did not err by not discussing Ms. Morgan's subjective complaints regarding her back impairment.[4]

*2. Dr. Muthappa's Opinion*

Dr. B.C. Muthappa ("Dr. Muthappa") submitted an opinion statement in April 2021, in which he found, among other things, that Ms. Morgan would be limited in lifting, bending, and stooping, and, as a result of her impairments, would be absent from work for more than four days each month. *See* Tr. 849. The ALJ found this opinion unpersuasive. *See id.* at 246. The ALJ found, "Although the opinion is supported by review of treatment records from a treating relationship, those records do not support this level of dysfunction. The opinion is inconsistent with evidence of minimal abnormal findings during examinations (Exhibits 14F, p. 2; 15F, p. 1; 22F, p. 6; 23F, p. 1)." *Id.*

Ms. Morgan argues:

> The ALJ quoted from 4 pages in the record to discredit Dr. Muthappa. The ALJ is not allowed to cherry pick the record to discredit his opinion. There are 149 pages of records from Dr. Muthappa. He has treated the Plaintiff for more than 17 years. He has physical examinations, CT scans, blood tests, and other objective findings in the record that support his opinion. D[r]. Muthappa's opinion is consistent and supported by the medical evidence.

Dkt. 12 at 8. The Commissioner argues that the evidence cited to by the ALJ supports the ALJ's finding that Dr. Muthappa's opinion was unpersuasive. *See* Dkt. 17 at 7–8.

When determining the persuasiveness of a medical opinion or prior administrative finding, the ALJ considers the following factors: (1) "Supportability"; (2) "Consistency"; (3) "Relationship with the Claimant"; (4) "Specialization"; and (5) "Other factors." 20 C.F.R. § 404.1520c(c).

---

[4] Ms. Morgan also points to a CT of her lumbar spine, dated 1/26/19, which she argues is "an objective test that supports [her] pain." Dkt. 12 at 7. The ALJ specifically noted a "subsequent examination by Dr. Muthappa in December 2019 revealed full strength in the claimant's lumbar spine, and the claimant had 5/5 strength in all muscle groups." Tr. 245 (citing Exh. 5, p. 14).

11

Supportability and consistency are the "most important factors." 20 C.F.R. § 404.1520c(b)(2). Accordingly, the ALJ "will explain how he considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.*

"Supportability" refers to:

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to:

> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(2). The ALJ "may, but [is] not required to, explain how he considered [the other factors]." 20 C.F.R. § 404.1520c(b)(2).

"There is limited case law concerning what constitutes a sufficient 'explanation' of supportability and consistency under 20 C.F.R. § 404.1520c(b)(2)." *Georgopoulos v. Comm'r, SSA*, No. 4:21-CV-00192-ALM-CAN, 2022 WL 3023247, at *8 (E.D. Tex. July 8, 2022), *R & R adopted*, 2022 WL 3018417 (E.D. Tex. July 29, 2022). "Generally, there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-cv-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (citation omitted). "District courts in the Fifth Circuit have held that the current standard for consideration of medical source opinions requires an ALJ to articulate 'a discernible logic bridge between the evidence and the ALJ's persuasiveness finding.'" *Nunley v. Kijakazi*, No. 4:22-CV-0625, 2023 WL 2386747, at *4 (S.D. Tex. Mar. 6, 2023) (quoting *McAdams v. Comm'r of Soc. Sec.*, No. 3:21-CV-00203, 2022 WL

17096166, at *3 (S.D. Tex. Nov. 21, 2022)). "At a minimum, the ALJ's discussion must give enough reasons to permit meaningful judicial review." *Hubbard*, 2022 WL 196297, at *4.

While she does not frame her argument as such, Ms. Morgan appears to argue that the ALJ's supportability analysis was improper.[5] The Court disagrees. The ALJ cited to several findings from treatment records of Dr. Muthappa which showed minimally abnormal findings. *See* Tr. 246. Rather than "cherry picking," the ALJ explained his opinion and provided for meaningful judicial review. Courts have found that citations to specific evidence in the record constitute an adequate articulation of the supportability and consistency factors. *See, e.g.*, *Leslie G. v. Comm'r, Soc. Sec. Admin.*, No. 5:21-CV-202-H-BR, 2022 WL 19518463, at *4 (N.D. Tex. Sept. 27, 2022), *R. & R. adopted sub nom. Leslie G. v. Kijakazi*, 2023 WL 2536111, (N.D. Tex. Mar. 16, 2023); *Lara v. Kijakazi*, No. 3:21-CV-1032-L-BH, 2022 WL 4486085, at *13 (N.D. Tex. Aug. 29, 2022), *R. & R. adopted*, 2022 WL 4485826 (N.D. Tex. Sept. 27, 2022).

Moreover, in another portion of his report, the ALJ discusses non-abnormal findings and controlled symptoms in various parts of Dr. Muthappa's treatment notes. *See* Tr. 245 (citing, among other notes, that "[e]xamination revealed full muscle strength, and tenderness in the bilateral upper and lower extremities" and that Ms. Morgan's joint pain was "controlled with Lyrica"). When considered in the context of the ALJ's full RFC discussion, the ALJ's supportability discussion of Dr. Muthappa's opinion statement is further strengthened. *See Garner v. Kijakazi*, No. 1:22-CV-0563-DH, 2023 WL 1976713, at *5 (W.D. Tex. Feb. 13, 2023) ("The ALJ's discussion of the persuasiveness of a medical opinion and the consistency and supportability

---

[5] The Court clarifies that to the extent Ms. Morgan attempts to make a consistency argument, she has failed to adequately do so. The framing of Ms. Morgan's argument, i.e., "There are 149 pages of records *from Dr. Muthappa*"; "*He* has treated [Ms. Morgan] for more than 17 years"; "*He* has physical examinations, CT scans, blood tests, and other objective findings in the record that *support* his opinion," Dkt. 12 at 8 (emphases added), indicate that Ms. Morgan contends Dr. Muthappa's own treatment notes support the findings in his opinion.

factors is not confined to the specific discussion of the opinion itself but is considered in light of the entire RFC discussion and the evidence discussed therein."); *Teixeira v. Comm'r, SSA*, No. 4:21-CV-00003-SDJ-CAN, 2022 WL 3130859, at *9 n.15 (E.D. Tex. July 12, 2022), *R. & R. adopted*, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022) ("[T]he ALJ's assessment and articulation of consistency and supportability must be read in full context of the RFC findings[.]") (citation omitted).

Overall, by noting that Dr. Muthappa's opinion is "inconsistent with evidence of minimal abnormal findings during examinations," Tr. 246, and citing several examples of minimal abnormal findings, the ALJ has articulated "a discernible logic bridge" between the evidence and his findings, *Nunley*, 2023 WL 2386747, at *4; *cf. Bridges v. Comm'r of Soc. Sec.*, No. 4:20-CV-89-DMB-DAS, 2021 WL 2908671, at *2 (N.D. Miss. June 21, 2021), *R. & R. adopted sub nom. Bridges v. Saul*, 2021 WL 2907892 (N.D. Miss. July 9, 2021) ("Stating that a provider's records 'contained no objective findings,' to support an opinion, without any further explanation, is meaningless boilerplate.").

Accordingly, Ms. Morgan's arguments as to the ALJ's assessment of her physical RFC are unpersuasive.

### B. Mental RFC

In making his RFC determination, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). However, "[t]hat the ALJ [does] not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence." *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (rejecting as unnecessary a rule requiring ALJ to specifically

14

articulate evidence that supported decision and discuss evidence that was rejected)). Ultimately, the ALJ is not obligated to discuss every statement made within a doctor's opinion. *See Vandestreek v. Colvin*, No. 7:14-CV-00001-O, 2015 WL 1239739, at *9 & n.4 (N.D. Tex. Mar. 17, 2015) ("[T]he ALJ need not have discussed every finding contained in [the doctor's] opinion, as [the claimant] suggests.") (collecting cases); *Penalver v. Barnhart*, No. SA-04-CA-1107, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected." (citing *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 (5th Cir. 2000))).

At step two, the ALJ found, among other things, that Ms. Morgan's depression, anxiety, and PTSD are severe impairments. *See* Tr. 240. At step four, the ALJ found Ms. Morgan is "limited to occasional interactions with coworkers" and that "her sustained concentration, persistence, and pace is limited to simple instructions and tasks." *Id.* at 242. The ALJ further found that, "[o]verall, the record as a whole supports a conclusion that [Ms. Morgan's] mental conditions would cause functional limitations, but not to the degree alleged in [Ms. Morgan's] application" and that "[Ms. Morgan's] anxiety, depression, and PTSD symptoms are accounted for in the residual functional capacity restrictions to unskilled work, simple tasks, and occasional contact with coworkers." *Id.* at 246. In the RFC, the ALJ discussed the medical evidence in the record relating to the foregoing conditions, and cited several pieces of evidence supporting his ultimate conclusion. *See, e.g.*, *id.* at 245 (citing a self-report of Ms. Morgan, in which she "reported few limitations in activities of daily living, indicating she could prepare meals, handle finances, and take care of her personal needs" (citing Exh. 9 at 4)); *id.* at 246 (citing evidence that Ms. Morgan's prescribed medications were helping her conditions (citing Exh. 16 at 6)).

Ms. Morgan first argues that "[t]he ALJ erred in finding [Ms. Morgan] was capable of work that required simple instructions and tasks and this functional capacity is inconsistent with a finding of severe mental impairments resulting in moderate limitations in concentration, persistence or maintaining pace because the limitation to unskilled work may not fully account for moderate limitations in concentration, persistence or maintain pace." Dkt. 12 at 9. The Commissioner responds that Ms. Morgan's "argument that the ALJ's evaluation at step [two] necessarily leads to a commensurate direct decrease in the RFC determination is without merit." Dkt. 17 at 10.

The Fifth Circuit has held, "The ALJ's finding that [the claimant] had 'a combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding." *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) (quoting 20 C.F.R. § 404.1520a(c)(2)); *see also Gutierrez v. Barnhart*, No. 04–11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) (per curiam) ("A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."). Moreover, "several Texas federal courts have found that an ALJ does not err solely by finding an impairment severe at step two and failing to attribute any limitation to that impairment in his RFC assessment." *Walker v. Colvin*, No. 3:14-CV-1498, 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) (collecting cases).

Accordingly, as the Commissioner argues, a finding at step two that a condition is severe does not necessitate a certain RFC finding. Rather, in the Court's review of the ALJ's RFC finding, the Court focuses on the ALJ's discussion of the medical evidence related to the severe impairment. *See Rivera v. Comm'r of Soc. Sec.*, No. 6:20-CV-00614, 2021 WL 7906837, at *1

(E.D. Tex. Nov. 22, 2021) (finding the ALJ did not commit reversible error where the ALJ extensively discussed why the severe impairments that he found were not as intense, persistent, or limiting as the plaintiff claimed, and the ALJ discussed and weighed all of the medical opinions and discussed why he gave some opinions more weight than others); *Risinger v. Comm'r, Soc. Sec. Admin.*, No. 6:12cv885, 2014 WL 4829527, at *7–8 (E.D. Tex. Sept. 26, 2014) (finding the ALJ committed reversible error where the ALJ failed to thoroughly discuss and analyze the objective medical evidence related to the severe impairment). Therefore, Ms. Morgan's argument that the ALJ's step two and step four findings are necessarily inconsistent is unpersuasive.

Additionally, Ms. Morgan argues that "[t]he ALJ is ignoring hundreds of pages of mental health records that are contrary to his finding." Dkt. 12 at 11. The Commissioner responds that Ms. Morgan is impermissibly asking the Court to reweigh the evidence in the record. *See* Dkt. 17 at 11–12.

Ultimately, Ms. Morgan's argument is unpersuasive, as it amounts to her citation to various pieces of evidence in the record that she argues would support a more restrictive RFC than the RFC the ALJ assessed. Critically, Ms. Morgan does not articulate what she believes was faulty about the ALJ's RFC assessment or his assessment of the evidence on which he did in fact rely. That is, Ms. Morgan does not actually challenge the "basis of [the ALJ's] assessment." *Penalver*, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005). Evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935; *accord Anderson, v. Kijakazi,* Civil Action H-20-2551, 2022 WL 677068, at *9 (S.D. Tex. Feb. 17, 2022), *R. & R. adopted*, 2022 WL 675807 (S.D. Tex. Mar. 7, 2022) ("Moreover, the ALJ, not the court or [the claimant], has the responsibility for weighing medical opinions, resolving conflicts, and

determining the claimant's RFC.") (citations omitted); *Parson v. Comm'r of Soc. Sec.*, No. 4:21-CV-00041-O-BP, 2022 WL 606741, at *5 (N.D. Tex. Jan. 28, 2022), *R. & R. adopted*, 2022 WL 605294 (N.D. Tex. Mar. 1, 2022) ("The Court will neither reweigh the evidence nor substitute its judgment for the Commissioner's; it will only examine the record to ensure substantial evidence supports the conclusion reached.") (citations omitted).

Accordingly, Ms. Morgan's arguments as to the ALJ's assessment of her mental RFC are unpersuasive.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 31st day of August, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE